713 So.2d 464 (1998)
King D. LANKFORD, Jr., Billy Jay Nance, Jommy A. Langston, Jim N. Wederberg, David J. Lankford, Burris Run Company, Donald P. Ross, Jr., and Joan R. Bolling
v.
KOCH GATEWAY PIPELINE CO.
No. 98-C-0719.
Supreme Court of Louisiana.
June 5, 1998.
*465 PER CURIAM.[*]
This is a breach of contract action in which the plaintiffs alleged the defendant pipeline company breached its obligations by (1) its failure to pay for gas it received during a brief period in 1991 and (2) its subsequent refusal to take gas that it was allegedly obligated to buy. The trial court granted a partial summary judgment for the defendant on the second issue, finding that the defendant was not obligated to buy any gas from the plaintiffs under the amended contract. The court of appeal affirmed in an unpublished opinion. We reverse that partial summary judgment and remand the case to the trial court.
The plaintiffs' predecessors and the defendant's predecessors entered into gas sales contracts beginning in 1929. The sellers agreed to sell, and the buyer agreed to buy, all of the gas that the sellers could provide. In 1931, the parties amended their agreement to include a "take or pay" provision, under which the buyer was obligated to buy a set minimum amount of gas or to pay for that amount of gas if it declined to take it. In 1956, the parties again amended their agreement, this time removing the "take or pay" obligation. After decades of buying and selling under the amended contract, the instant dispute arose in 1991 when defendant refused to accept any more gas from the sellers.
The lower courts found that the two-page letter amendment in 1956 eliminated any obligation for the buyer to purchase any of the sellers' gas, based on the following language:
From and after January 1, 1956, there shall be no obligation on us [buyer] to take any minimum quantity of gas from the lands and leaseholds covered by the contracts, as amended, nor shall there be any obligation on us to make any payments for gas which we do not actually receive from such lands and leaseholds. (emphasis added).
The lower courts decided that the underscored language unambiguously eliminated any obligation on the defendant's part to buy gas or on the plaintiffs' part to sell gas.[1] The lower courts also declined to consider the plaintiffs' evidence that the 1956 amendment arose from their inability to provide the buyer with the requisite "take or pay" amounts because of low delivery pressures. This evidence was the basis of the plaintiffs' contention that the 1956 amendment simply returned the parties to an "output" contract relationship, in which the buyer was obligated to buy whatever gas the sellers could provide, an amount inherently and implicitly limited by the low delivery pressure of the plaintiffs' gas going into the defendant's pipeline.
When read in isolation, the underscored "no obligation" language does suggest that the buyer has "no obligation" to take anything. However, the underscored language must not be read in isolation. The provisions of a contract must be read in light of each other. See La. Civ.Code art.2050 (repeating the essence of La. Civ.Code art.1955, which was in effect when the contract was created and amended).
The 1956 amendment itself suggests underlying obligations to buy and sell. Also, the defendant, in a 1986 letter agreement amending the contract, noted that it had been invoking force majeure provisions to refuse the sellers' deliveries. This reliance on force majeure belies any contention that the 1956 amendment "unambiguously" allowed the buyer to take or refuse to take at will. If the buyer was "clearly" not obligated to take any gas, then there was no need to invoke force majeure.
These provisions, even without more,[2] indicate that the underscored language is susceptible of more than one meaning. The language could mean that there is no obligation *466 to buy any gas at all, or it could simply mean that the buyer still must take some quantity of gas to be determined by means other than a set "take or pay" amount. See, e.g., 6 Saul Litvinoff Louisiana Civil Law TreatiseObligations, 201-02, 535-39 (1969) (discussing "requirements" contracts and "output" contracts). Because the 1956 amendment is susceptible of differing meanings, it is ambiguous. Consequently, the intended meaning of the 1956 amendment is a contested issue of material fact, and summary judgment was improperly granted. La.Code Civ. Proc. art. 966.
In resolving the contested issue on remand, the trial court should consider the plaintiffs' parol evidence relevant to the intent of the parties in light of all the circumstances of their relationship and the gas market over the years. See Diefenthal v. Longue Vue Mgmt. Corp., 561 So.2d 44, 51 (La.1990) (parol evidence admissible to resolve ambiguity).
Accordingly, the partial summary judgment is reversed, and the case is remanded to the trial court for further proceedings.
NOTES
[*] Knoll, J., not on panel. See Rule IV, Part 2, § 3.
[1] Under this interpretation, the contract was construed as merely a formula for computing a price if a sale were confected.
[2] Neither party has provided this court with a copy of the complete agreement, nor even with a complete copy of the 1956 letter agreement. Nonetheless, the available documents indicate that the passage relied upon by the defendant and the lower courts is susceptible of different meanings.